

RECEIVED
DEC 1 8 2020
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-CR-181(1)(PJS/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **PLEA AGREEMENT AND SENTENCING STIPULATIONS** |
| v. | |
| DYLAN SHAKESPEARE ROBINSON, | |
| Defendant. | |

The United States of America and defendant DYLAN SHAKESPEARE ROBINSON (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with Conspiracy to Commit Arson, in violation of 18 U.S.C. § 371. The defendant fully understands the nature and elements of the crime with which he has been charged.

2. **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count One of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:


Signed copy


SCANNED
DEC 1 8 2020
U.S. DISTRICT COURT MPLS

On or about May 28, 2020, the defendant, along with others (collectively, the "co-conspirators"), knowingly and intentionally conspired, to damage and destroy, and attempt to damage and destroy, by means of fire, the Minneapolis Police Department Third Precinct police station (hereafter the Third Precinct headquarters), a building used in interstate or foreign commerce and in activity affecting interstate or foreign commerce.

It was part of the conspiracy that on May 28, 2020, the defendant and other individuals gathered near the Third Precinct headquarters located at 3000 Minnehaha Avenue, Minneapolis, in the District of Minnesota and thereafter collectively engaged in conduct designed to maliciously damage or destroy the building by means of a fire.

The defendant voluntarily and intentionally joined in the agreement with co-conspirators, either at the time it was first reached, or at some later time while it was still in effect. At the time the defendant joined in the agreement, the defendant knew the purpose of the agreement, which was to commit an act of arson at the Third Precinct headquarters. While the agreement was in effect, the defendant and other co-conspirators committed, directly and through others, certain overt acts, in furtherance of the conspiracy and to achieve its objects, including but not limited to the following:

The defendant arrived alone in the area of the Third Precinct headquarters during the day on May 28, 2020. The defendant joined a number of other protesters gathered outside the Third Precinct headquarters, engaged in a largely peaceful

protest. However, as the day turned into evening, the defendant and others at the Third Precinct headquarters became more aggressive. At one point, the defendant heard many protesters shouting, "burn it down, burn it down," referring to the Third Precinct headquarters. The defendant saw that a fence that had been erected surrounding the Third Precinct headquarters was torn down. The defendant joined many others to breach the perimeter and enter the Third Precinct headquarters curtilage and building.

The defendant, assisted by an unidentified co-conspirator, lit an item being held by the unidentified co-conspirator. This unidentified co-conspirator then threw the item toward the Third Precinct headquarters with the intent that it would start a fire or fuel an existing fire. At the time the unidentified co-conspirator threw the item, the Third Precinct headquarters were already significantly damaged by multiple fires that had been previously lit.

The Minneapolis Police Department is an organization that participates in interstate commerce. Specifically, the Minneapolis Police Department and the City of Minneapolis conduct business in interstate commerce, for example by purchasing vehicles and other equipment and supplies through interstate commerce. The activities of the Minneapolis Police Department and the City of Minneapolis government in enforcing laws also affect interstate commerce.

3. **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this

plea agreement and the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of his conviction, he could be assessed the costs of prosecution and experience

additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.  **Statutory Penalties.**  The defendant understands that Count One of the Indictment (Title 18, United States Code, Section 371) is a felony offense that carries the following statutory penalties:

   a.  a maximum of 5 years in prison;

   b.  a supervised release term of not more than 3 years;

   c.  a maximum fine of $250,000;

   d.  assessment to the defendant of the costs of prosecution, imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920; and

   e.  a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7.  **Revocation of Supervised Release.**  The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

8.  **Guidelines Calculations.**  The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the

appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

    a.    <u>Base Offense Level</u>. The parties agree that the **base offense level is 24**. U.S.S.G. § 2X1.1(a); § 2K1.4(a)(1).

    b.    <u>Specific Offense Characteristics</u>. The parties agree that that no specific offense characteristics apply.

    c.    <u>Chapter 3 Adjustments</u>. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

    d.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant move to withdraw his guilty plea after it is entered.

    e.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into **Criminal History Category II**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by

the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

 f. <u>Guidelines Range (Defense Position)</u>. If the adjusted offense level is 21, and the **criminal history category is II**, the Sentencing Guidelines range is **41-51 months of imprisonment.**

 g. <u>Fine Range</u>. If the adjusted offense level is 21, the Sentencing Guidelines fine range is $15,000-$150,000. U.S.S.G. § 5E1.2(c).

 h. <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of at least 1 year up to a maximum supervised release term of 3 years. U.S.S.G. § 5D1.2(a)(2).

9. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory, and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. The parties reserve

the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11.     **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment at the time of sentencing.

12.     **Restitution.** The defendant understands and agrees that 18 U.S.C. § 3663, and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, apply to this case and that the Court is required to order the defendant to make restitution to the victims of his crimes. The defendant agrees that he owes restitution. The Defendant agrees that the loss amount to the City of Minneapolis is $12,000,000. Based on this agreement, the parties waive any evidentiary hearing on the issue of restitution. The defendant reserves his right to make legal arguments as to the amount of restitution to be paid by the defendant.

The defendant represents that he will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court. As part of this Agreement, the

defendant will complete, under penalty of perjury, a financial disclosure form—provided by the United States—listing all the defendant's assets and financial interests valued at more than $1,000. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstance. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

13. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of his violation of 18 U.S.C. § 371, and pursuant to 18 U.S.C. § 844(c) and 28 U.S.C. § 2461(c), any explosive materials involved, or used, or intended to be used, in that violation. The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit any additional directly forfeitable property.

14. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range determined by the district

court. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range determined by the district court.

15. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16. **Complete Agreement.** This, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between

the United States and the defendant.

                                      ERICA H. MacDONALD
                                      United States Attorney

Date: 12/14/2020

                               /s David P. Steinkamp
                          BY: HARRY M. JACOBS
                               DAVID P. STEINKAMP
                               Assistant United States Attorney

Date: 12-15-20

                               DYLAN SHAKESPEARE ROBINSON
                               Defendant

Date: 12-15-20

                               WILLIAM MAUZY
                               Counsel for Defendant